[No. B134542. Second Dist., Div. Five. Sept. 25, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA CATHERINE BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of portions of part III.A., B., C.1 heading, C.2, and C.3.

**COUNSEL**

Schonbrun, Desimone, Seplow, Harris & Hoffman and Paul L. Hoffman for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

John R. Gorey and Renee Rich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## TURNER, P. J.—

### I. INTRODUCTION

Defendant, Linda Catherine Brown, appeals from her conviction for attempted voluntary manslaughter. (Pen. Code,[1] §§ 664, 192, subd. (a).) She was also found to have personally used a firearm in the commission of the offense and inflicted great bodily injury. (§§ 12022.5, subd. (a)(1), 12022.7, subd. (a).) Defendant argues that the trial court improperly: admitted evidence of prior incidents; refused to instruct the jury with defendant's proposed pinpoint instruction; and sentenced her to the high term for the firearm enhancement. Defendant also argues that the 10-year section 12022.5 subdivision (a)(1) enhancement constitutes cruel and unusual punishment. Both defendant and the Attorney General agree that the abstract of judgment should be corrected to reflect the imposition and stay of a three-year enhancement pursuant to section 12022.7, subdivision (a). In the published portions of this opinion we discuss several sentencing issues raised by the parties. Other than the modification to the abstract, the judgment is affirmed.

### II. FACTUAL BACKGROUND

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Defendant, who was unmarried, and Kevin Cummings, who was married, had an extramarital affair between 1994 and 1997. Throughout this time period, both were employed by the Santa Monica Police Department as police officers. On October 1, 1997, Mr. Cummings felt he needed to talk to defendant. He wanted to end their relationship. Mr. Cummings had gone to the sand dunes at Manhattan Beach that evening to work out. When he left there, he received a page indicating only a tone. He believed the page was from defendant. Mr. Cummings had been receiving pages from defendant three or four times each day. However, Mr. Cummings had neither responded to the pages nor communicated with defendant for approximately two weeks. Mr. Cummings drove towards Santa Monica where he planned to

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

use the credit union automated teller machine at the police station. He needed to withdraw $300 cash for his wife. However, while en route, Mr. Cummings realized that he did not have his bank card. He exited the freeway in order to return home.

Thereafter, Mr. Cummings received another tone page, which he believed was from defendant. Mr. Cummings decided to telephone defendant. He drove around until he found a phone booth in what he believed was a safe neighborhood. In the meantime, he received another page that listed a phone number of "10-20" and several other numbers. Mr. Cummings tried to telephone defendant at her home without success. He then paged her and indicated the number of the pay phone from which he was calling. Thereafter he received another page with "10-20" followed by other numbers. Mr. Cummings believed the 10-20 was the police code requesting "your location." He did not receive a call at the phone booth. Mr. Cummings then got back on the freeway to go home. While on the freeway, he observed defendant drive up behind him. Defendant signaled Mr. Cummings to follow her. Thereafter, Mr. Cummings followed defendant to her home.

Once inside defendant's home, Mr. Cummings told defendant that he intended to end their relationship. Defendant attempted to change Mr. Cummings's mind. When she was unable to do so, she became angry. When Mr. Cummings tried to leave, defendant put her arms around him, told him she loved him and said, "Don't do this." Mr. Cummings turned to leave. Defendant ran to a coffee table, reached inside, and pulled out a rolled up towel. Defendant stood up with the towel in her hand. Mr. Cummings turned to see what was happening. Mr. Cummings heard two loud pops and saw two flashes of light and smoke. Mr. Cummings felt his physical state slow down but did not realize he had been shot. He heard another pop and saw a flash and smoke. He felt a burning sensation above his right hip. When Mr. Cummings realized he had been shot, he moved toward defendant. He yelled at defendant and attempted to grab the gun from her. Both defendant and Mr. Cummings fell over the coffee table. As Mr. Cummings tried to get the gun away from defendant it fired. The bullet struck Mr. Cummings in the right thigh. Mr. Cummings took the gun and ran out of the house to his car. Defendant stood between the open car door and Mr. Cummings. Defendant told him to stay. She said she would get help. Mr. Cummings backed his car up and closed his door. He then drove himself to the hospital. While en route to the hospital, Mr. Cummings threw the gun out of his car window onto a center median. Mr. Cummings underwent surgery for two bullet wounds to his chest, one to his mid-abdomen, and one to his leg.

On October 1 and 2, 1997, Mr. Cummings was interviewed by officers from the Inglewood and Manhattan Beach Police Departments. Mr. Cummings gave them varied accounts regarding where and by whom he had been

shot. On October 3, 1997, Mr. Cummings told Inglewood Police Detective Craig Lawler that defendant had shot him at her home. On October 3, 1997, Los Angeles County Sheriff's Detectives Kenneth Gallatin and Ronnie Lancaster and Lieutenant Ray Peavy interviewed defendant at the Santa Monica Police Department. The detectives advised defendant that they were there to investigate the shooting of Mr. Cummings. Defendant was advised of her constitutional rights. Defendant asked what time Mr. Cummings was shot. Detective Gallatin told her that her name was mentioned as the individual responsible for the shooting. She responded, "No, I am not." Defendant told the detectives that she had been with her friend, Bob Barton, on the night of the shooting. She and Mr. Barton had gone to a gym to work out. They returned to his home for an hour and a half. She then returned to her home alone.

On October 4, 1997, Detective Gallatin recovered a loaded .22-caliber semiautomatic handgun containing a clip from the center divider on La Cienega Boulevard, where Mr. Cummings had thrown it. The gun had a live round of ammunition in the chamber. In the early morning hours of October 2, 1997, Inglewood Police Officer Lawrence Kirkley went to Daniel Freeman Hospital to speak to Mr. Cummings. However, Mr. Cummings was in surgery. Officer Kirkley looked at Mr. Cummings's pager. The number displayed was "102074952." The time displayed was 8:59. It was subsequently determined that the number of a pay telephone located at a 7-Eleven store near Mr. Barton's home was "310 207-4952." Defendant presented defenses of perfect and imperfect self-defense as well as heat of passion. Both defendant and Mr. Cummings were impeached by lies they told to detectives at various stages of the investigation of the shooting.

III. DISCUSSION

A., B.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

■ Defendant argues that the trial court's imposition of the high term of 10 years for the section 12022.5, subdivision (a)(1), firearm enhancement was arbitrary and inconsistent with the verdict and the evidence. She further contends it was error to impose the 18-month low term for attempted voluntary manslaughter yet require her to serve the 10-year term for firearm use. We disagree.

Preliminarily, defendant failed to object to the reasons for the sentencing choice at trial, thereby waiving at specific issue on appeal. The failure to

---

*See footnote, *ante,* page 1037.

state reasons or the use of improper circumstances for a sentencing decision is not a jurisdictional error. (*People v. Scott* (1994) 9 Cal.4th 331, 355 [36 Cal.Rptr.2d 627, 885 P.2d 1040] [the defendant's claim that reasons used for sentencing were "inapplicable, duplicative, and improperly weighed" was waived]; *People v. de Soto* (1997) 54 Cal.App.4th 1, 7-8 [62 Cal.Rptr.2d 427] [improper dual use of facts underlying weapons use to impose the upper term waived by failure to impose a more specific objection at sentencing]; *People v. Kelley* (1997) 52 Cal.App.4th 568, 581-582 [60 Cal.Rptr.2d 653] [failure to consider mitigating factors]; *People v. Middleton* (1997) 52 Cal.App.4th 19, 36 [60 Cal.Rptr.2d 366] [the defendant cannot object to enhancement for first time on appeal]; *People v. Minder* (1996) 46 Cal.App.4th 1784, 1791-1792 [54 Cal.Rptr.2d 555] [failure to comply with requirement in rule 433(b) of Cal. Rules of Court to state reasons for imposing upper term when imposition of sentence is suspended]; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 91 [53 Cal.Rptr.2d 553] [improper dual use of facts to impose upper term waived]; *People v. Zuniga* (1996) 46 Cal.App.4th 81, 83-84 [53 Cal.Rptr.2d 557] [failure to state any reason for sentence choices]; *People v. Dancer* (1996) 45 Cal.App.4th 1677, 1693 [53 Cal.Rptr.2d 282], overruled on other grounds in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123 [65 Cal.Rptr.2d 1, 938 P.2d 986] [improper use of particularly vulnerable aggravating factor to impose upper term]; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1691 [43 Cal.Rptr.2d 129] [finding application of waiver rule to improper use of enhancement to impose upper term and reaching the merits of the issue]; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1310-1312 [28 Cal.Rptr.2d 172] [failing to state reasons for upper term]; *People v. Neal* (1993) 19 Cal.App.4th 1114, 1117-1124 [24 Cal.Rptr.2d 129] [failing to state reasons for consecutive sentences].) As a result, no jurisdictional error occurred, and any dispute with the reasons selected for imposing the upper term of 10 years pursuant to section 12022.5, subdivision (a)(1), has been waived.

Notwithstanding that waiver in terms of the specific reasons for the sentence choice, we agree with the Attorney General that no error occurred. At the time sentence was imposed, the trial court reviewed the probation report, sentencing memoranda, and letters presented by defense counsel on defendant's behalf. Defense counsel requested that the trial court consider the case to be unusual and grant probation. Defense counsel further argued: defendant should not be punished for acting in self-defense and using bad judgment; the gun was not really an aggravating factor; defendant had an upstanding life; defendant was a good police officer; and Mr. Cummings also lied about what occurred. The prosecutor argued that during the trial evidence became available in the form of medical records that served to refute the fact that defendant had been injured during the struggle with Mr.

Cummings. He further argued that defendant's crime was more serious than other attempted voluntary manslaughters due to the use of the gun. Finally, he argued that although defendant's character before the crime occurred was exemplary, her behavior after the shooting reflected that she: committed misdemeanors while employed; had an obsession with Mr. Cummings; did not demonstrate remorse; and she engaged in course of "denial" and "coverup" during the trial.

In imposing sentence, the trial court indicated that it would base its sentencing decision on the evidence presented during the trial. The trial court noted, "You [defense counsel] indicated as well that what we're dealing with in this case is momentary lapse of judgment on the part of [defendant], but the crime of voluntary manslaughter involved a momentary lapse of judgment." The trial court continued that the case was unusual because the defendant was a police officer. The court noted: "We certainly do not expect a police officer to shoot a fellow police officer multiple times during what I think could most charitably be described as a lover's quarrel. We don't expect that very same police officer to destroy the evidence, and then to go about her business as if nothing has happened. [¶] This is not a case . . . where we're dealing with a police officer who, in the performance of her duties, makes an error of judgment, used—perhaps used excessive force in apprehending a suspect. . . . [¶] . . . [¶] This is a situation where a police officer, who should know better, chose to use deadly force to solve a personal problem and during the course of that use of deadly force inflicted some very severe injuries." Thereafter, the trial court found this was not an unusual case in the statutory sense. The trial court denied probation. The trial court sentenced defendant to one and one-half years for the attempted voluntary manslaughter, noting defendant's lack of prior significant criminal history. In imposing the 10-year enhancement pursuant to section 12022.5, subdivision (a)(1), the trial court chose the high term, noting defendant "used this firearm repeatedly and inflict[ed] great bodily injury." The trial court then imposed and stayed a three-year term for the great bodily injury enhancement pursuant to section 12022.7, subdivision (a).

California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice, including the selection of an upper term for an enhancement. (*People v. Osband, supra,* 13 Cal.4th 622, 730; *People v. Cruz* (1995) 38 Cal.App.4th 427, 433 [45 Cal.Rptr.2d 148]; *People v. Williams* (1991) 228 Cal.App.3d 146, 152-153 [278 Cal.Rptr. 801]; *People v. Dreas* (1984) 153 Cal.App.3d 623, 636-637 [200 Cal.Rptr. 586]; *People v. Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692].) The California Supreme Court has determined: "[T]he Legislature contemplated the use of factors relating both to the crime *and to the defendant* in imposing

the upper or lower term. The fact that [*People v.*] *Cheatham* [(1979) 23 Cal.3d 829, 834-837 [153 Cal.Rptr. 585, 591 P.2d 1237]] and [*People v.*] *Wright* [(1982) 30 Cal.3d 705, 709-714 [180 Cal.Rptr. 196, 639 P.2d 267]] were concerned with substantive offenses rather than enhancements does not alter their analysis of the legislative intent underlying section 1170, which governs sentencing both with respect to substantive offenses and enhancements." (*People v. Hall* (1994) 8 Cal.4th 950, 961 [35 Cal.Rptr.2d 432, 883 P.2d 974], original italics; see *People v. Rayford* (1994) 9 Cal.4th 1, 9-10 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) In addition, aggravating factors may include other circumstances that are reasonably related to the sentencing determination. California Rules of Court, rule 408, subdivision (a), provides: "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria shall be stated on the record by the sentencing judge." (See also *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 363 [46 Cal.Rptr.2d 715]; *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1738-1739 [45 Cal.Rptr.2d 757]; *People v. Guevara* (1979) 88 Cal.App.3d 86, 93 [151 Cal.Rptr. 511] ["Moreover, the 'circumstances' the sentencing judge may look to in aggravation or in mitigation of the crime include 'attendant facts,' 'the surroundings at the commission of an act.' [Citation.] 'Circumstances' include 'practically everything which has a legitimate bearing' on the matter in issue. [Citations.]"].) The trial court here made reference to the fact that defendant was a police officer who decided to use deadly force to solve a personal problem and caused serious injury, thereafter destroying evidence. Such is particularly an aggravating factor—a peace officer's sworn duty is to protect the guilty and the innocent—not to unlawfully shoot an unarmed estranged lover. Further, the trial court noted she used the handgun repeatedly—she shot Mr. Cummings four times—and inflicted great bodily injury on him.[3] The trial court did not abuse its discretion in sentencing defendant to the upper term for the firearm use enhancement.

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

Further, defendant argues that it was inappropriate for the trial court to impose the 18-month low term for attempted voluntary manslaughter but

---

[3]We disagree with defendant's assertion in the opening brief that the only reasons given for the imposition of the upper term were the repeated use of the handgun and the serious bodily injury sustained by Mr. Cummings. The trial court began its statement of reasons, none of which was the subject of any objection, by stating it was basing its sentencing decision on the evidence presented in this case. The trial court then discussed the incongruency of a peace officer acting as defendant did in this case. Later, the court added the factors of repeated handgun use and great bodily injury in its recitation of sentencing reasons for the imposition of the upper term on the section 12022.5, subdivision (a) enhancement.

*See footnote, *ante,* page 1037.

then require her to serve the aggravated 10-year sentence for firearm use. Defendant argues: "In this case, the trial court had already determined that the mitigating factors outweighed the aggravating factors. This balance could not magically swing to the other end of the spectrum in the context of a firearm enhancement. When weighing the 'entire record' the mitigating factors clearly outweighed the aggravating factors for all purposes and [a]ppellant should have received the three-year low-end enhancement." This contention has no merit. The statutory basis for the selection of punishment for offenses or enhancements which contain three potential terms is section 1170, subdivision (b) which states in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime. . . . In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall set forth on the record the facts and reasons for imposing the upper or lower term. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (See *People v. Hall, supra,* 8 Cal.4th at pp. 960-961 [enhancements]; *People v. Cheatham, supra,* 23 Cal.3d at p. 836 [principal offenses].) California Rules of Court,[4] rule 428(b) states: "When the defendant is subject to an enhancement that was charged and found true for which three possible terms are specified by statute, the middle term shall be imposed unless there are circumstances in aggravation or mitigation or unless, under statutory discretion, the judge strikes the additional term for the enhancement. [¶] The upper term may be imposed for an enhancement based on any of the circumstances in aggravation enumerated in these rules or, under rule 408, any other reasonable circumstances in aggravation that are present. The lower term may be imposed based upon any of the circumstances in mitigation enumerated in these rules or, under rule 408, any other reasonable circumstances in mitigation that are present." Rule 408(a) makes it clear additional relevant criteria may be utilized beyond that set forth in the California Rules of Court in making a discretionary sentencing decision. Further, in determining whether to impose an aggravated sentence, rule 421(a) allows the trial court to rely upon facts relating to the crime. Rule 421(b) permits the court to rely on facts relating to the accused. Nothing in the express language of section 1170, subdivision (b) or rule 428(b) requires

---

[4]All further references to rules are to the California Rules of Court unless otherwise indicated.

that if the low term is imposed for the principal offense, the aggravated sentence may not be imposed in connection with an enhancement. Insofar as defendant argues as a matter of statutory or rule-promulgated law that the sentence for a principal offense and accompanying enhancement must always be of the same level, upper, middle, or lower, her contention has no merit.

Likewise, there is no merit to defendant's argument that an abuse of discretion occurred in this case when the trial court imposed the 18-month low term for attempted voluntary manslaughter while requiring her to serve the full 10-year firearm-use sentence. In determining that a low term for attempted voluntary manslaughter was appropriate, the trial court focused on the absence of the significant prior record on defendant's part as well as the violation of her duties as a police officer. The trial court reasonably could have concluded that her misconduct in connection with the commission of principal offense, occurring during the heat of passion or unreasonably in response to a perceived threat by Mr. Cummings, was a less serious form of attempted voluntary manslaughter particularly given her absence of any prior felony convictions and her previous commission of only a single misdemeanor offense as a youth. Without abusing discretion, the trial court could legitimately conclude that the low term was in order. However, the trial court could also intelligently conclude that the misuse of the handgun in this case was aggravated by: the fact defendant fired four times; she inflicted great bodily injury on an unarmed victim; and she profoundly abused her sworn duties as a peace officer by acting as she did while using a handgun and destroying evidence. The trial court could have determined that there was nothing mitigating about the repeated use of a handgun to shoot an unarmed victim under these circumstances. The trial court ruled on facts pertinent to both the firearm use and defendant in making its decision something explicitly approved by rules 408, 421, and 428. No abuse of discretion occurred.

. . . . . . . . . . . . . . . . . . . . . . . . .*

## IV. DISPOSITION

The clerk of the superior court is directed to modify the abstract of judgment to reflect the imposition and stay of the three-year enhancement pursuant to Penal Code section 12022.7, subdivision (a), the clerk is to then

---

*See footnote, *ante,* page 1037.

forward a copy of the amended abstract of judgment to the California Department of Corrections. The judgment is affirmed in all other respects.

Grignon, J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied October 13, 2000, and appellant's petition for review by the Supreme Court was denied January 10, 2001. Mosk, J., was of the opinion that the petition should be granted.