Filed 8/1/14  P. v. Burke CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# **COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C070991 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F4523) |
| v. | |
| ADAM LEE BURKE, | |
| Defendant and Appellant. | |

A jury convicted defendant of four counts of lewd or lascivious acts with a child under the age of 14 (Pen. Code, § 288, subd. (a); unless otherwise stated, statutory references that follow are to the Penal Code).  In a bifurcated proceeding, the trial court found true allegations that defendant served two prior prison terms (§ 667.5, subd. (b)).  The court found defendant ineligible for probation and sentenced him to 16 years in state prison.

On appeal, defendant contends his sentence for count 1 should be stayed pursuant to section 654 because the offenses in counts 1 and 2 "arose from a single course of

1

conduct, incident to one objective." Defendant further contends imposition of the upper term was error because: the trial court improperly relied on his prior convictions to both enhance and justify his upper-term sentence; his acts were not "distinctively worse than the ordinary"; the court relied on factors not supported by sufficient evidence; and the court failed to consider certain mitigating circumstances. We affirm the judgment.

FACTS AND PROCEEDNGS

In June 2010, defendant lived with his then-girlfriend (later, his wife), Jennifer H., and Jennifer's three children. On June 12, 2010, Jennifer held a birthday pool party for her daughter, I.H., at Jennifer's sister's house. Eight year-old victim S.L. attended the party.

After the party, S.L. and several other children went to defendant's house for a slumber party. The children swam in the pool and played for a while. At some point, defendant told S.L. to bring her two younger siblings inside the house. When S.L. did, defendant said, "Come here and give your uncle a kiss." S.L. kissed defendant on the cheek. Defendant said, "Give me a kiss on the lips." S.L. kissed him on the lips, but defendant instructed, "No, put your tongue in my mouth and wiggle it." Not knowing what else to do, S.L. complied. Defendant also wiggled his tongue around. Although S.L. felt "[r]eally uncomfortable," she did not immediately tell anyone about the incident because she was afraid and did not know what to do.

That same day, S.L. and some of the other girls were playing dress-up and modeling for Jennifer. S.L. was wearing underwear, tights and a dress. As she sat on the floor by herself putting on make-up, defendant came in, reached under her dress and rubbed her "potty spot," referring to her vagina, over the top of her tights.

At another point, S.L. and some of the other children were playing in Jennifer's son, M.H.'s, bedroom. Defendant came in and said, "Come here, [S.L.]." When S.L. walked out with I.H., defendant said, "No, just [S.L.]." S.L. continued by herself into the

2

living room, where defendant "French kissed" her again by which she meant the act of "[p]utting your tongue in each other's mouth and wiggling it around."

That evening, S.L. and the other children were lying on the living room floor and defendant wrestled with everyone. At some point, defendant whispered in S.L.'s ear, "I'll wake you up tonight." He did not wake S.L. that night. He and Jennifer drove her home the following day.

S.L. revealed to her cousin E.W. that defendant "touched her on her pee-pee and tongue kissed her." E.W. in turn told her mother (S.L.'s aunt), "[S.L.] doesn't want anyone to know but she now knows how to French kiss." When E.W.'s mother asked E.W.'s brother D.W. about it, D.W. confirmed he saw defendant holding both sides of S.L.'s face and kissing her.

Defendant was charged with violating section 288, subdivision (a) (hereafter § 288(a)) in four separate instances, described in the jury instructions as follows: "Count 1 -- Kiss on the cheek. [¶] Count 2 -- Kissing on the mouth with tongue. [¶] Count 3 -- Touching of the potty spot. [¶] Count 4 -- Kissing associated with [M.H.'s] room." The jury found defendant guilty on all four counts.

At the sentencing hearing, defense counsel argued section 654 applied to counts 1 and 2, as both were incident to a single act. The prosecution argued the conduct charged in count 1 was separate and distinct from the conduct charged in count 2.

The trial court sentenced defendant to an aggregate term of 16 years comprised as follows: the upper term of eight years for count 1, plus consecutive two-year terms each (one-third the middle term) for counts 2, 3, and 4, and consecutive one-year terms for each of defendant's two prior prison commitments.

DISCUSSION

I

*Section 654*

Defendant contends the trial court's imposition of consecutive sentences for counts 1 and 2 violated the provisions of section 654.

Section 654, subdivision (a) provides, in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Under section 654, if the offenses are incidental to one objective, the defendant may be punished for any one of them, but not for more than one. Conversely, if the evidence reveals the defendant entertained multiple criminal objectives independent of one another, the court may impose punishment for independent violations committed in pursuit of each objective even if the violations shared common acts or were part of an otherwise indivisible course of conduct. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

We review a court's determination as to whether section 654 precludes multiple punishments under the substantial evidence standard of review. We view the evidence favorably to support the judgment and presume every factual finding that could reasonably be deduced from the evidence. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 626-627.)

The victim, S.L., testified that defendant called her into the house and said, "come here and give your uncle a kiss." She "went over there and gave [defendant] a kiss on the cheek." Next, defendant instructed S.L. to kiss him "on the lips." When S.L. did, defendant said, "No, put your tongue in my mouth and wiggle it." S.L. complied and defendant reciprocated.

We conclude there is substantial evidence defendant had two different objectives. One was to draw S.L. to a secluded part of the house and coax her into kissing him, thus allowing him to enjoy physical contact with her for his sexual gratification. After he found that a kiss on the cheek was not sufficient for him and that the child was at least willing to kiss him on the cheek, defendant then had a second objective, that is, to complete the significantly more intimate act of "French kissing" with open mouths and tongues, whereby defendant sought gratification in a much more active, aggressive manner. This evidence of defendant's multiple criminal objectives, both independent of one another, was sufficient to support independent sentences for each violation of § 288(a).

Defendant argues his singular intent was to commit the lewd act of kissing S.L. That is, he says, both kisses occurred in the same room within the span of a few seconds, and there was no evidence he discontinued his sexual assault during the interval between the kiss on the cheek and the open-mouth kiss. He argues the fact that he asked for a more specific type of kiss did not appreciably change the type of sexual behavior or indicate a break in the assault.

First, in support of his arguments, defendant cites *People v. Corona* (1988) 206 Cal.App.3d 13 (*Corona*), *People v. Pena* (1992) 7 Cal.App.4th 1294 (*Pena*), and *People v. Jones* (2001) 25 Cal.4th 98 (*Jones*). *Corona* and *Jones* address issues related to section 667.6, not section 654, and are therefore inapposite. *Pena* focuses on section 667.6 as well, lingering on section 654 only long enough to conclude that, where a defendant unlawfully enters a home for the sole purpose of sexually assaulting the victim, concurrent sentences for the burglary and rape offenses "does not satisfy the prohibition against double punishment." (*Pena, supra*, at pp. 1311-1312.) *Pena* is inapposite as well.

Next, as to defendant's argument that the "French" kiss did not appreciably change the type of sexual behavior, we think, the difference between a kiss on the cheek

5

and one involving open mouths and tongues is profound, particularly where the victim is of a tender age, as was the victim here.

Finally, the fact that the two offenses were temporally close is not dispositive of the section 654 question. "[S]ection 654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part of the same criminal venture, are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense." (*People v. Castro* (1994) 27 Cal.App.4th 578, 584-585; accord *People v. Perez* (1979) 23 Cal.3d 545, 553-554.) The first offense was complete when S.L. kissed defendant on the cheek. That kiss on the cheek, during which defendant remained relatively passive while coaxing S.L. to make contact with him, was distinct from and not necessary to facilitate the second "French kiss," during which defendant actively participated by instructing S.L. to put her tongue in his mouth and doing the same to her while apparently holding her head in his hands.

While the offenses in counts 1 and 2 were arguably part of an otherwise indivisible course of conduct, there is sufficient evidence defendant entertained multiple criminal objectives, independent of one another, thus supporting imposition of separate punishments for each violation of § 288(a). (*People v. Liu, supra,* 46 Cal.App.4th at p. 1135.) There was no error.

II

*Imposition of Upper-Term Sentence*

Defendant contends the trial court's imposition of the upper term was error because the court improperly relied on defendant's prior convictions to both enhance and justify his upper-term sentence, defendant's acts were not "distinctively worse than the ordinary," and some of the factors the court relied on are not supported by sufficient

evidence. Defendant further contends the trial court failed to consider mitigating factors. Finally, defendant contends that because these errors were not harmless, we should either modify the sentence or remand the matter for resentencing.

The People contend defendant is precluded from challenging imposition of the upper term because he failed to object at trial (*People v. Scott* (1994) 9 Cal.4th 331, 352-353 (*Scott*)) and, in any event, defendant's claims fail on the merits.

"Routine defects in the court's statement of reasons [for a sentencing choice] are easily prevented and corrected if called to the court's attention." (*Scott, supra,* 9 Cal.4th at p. 353.) "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial.' (*Scott, supra*, 9 Cal.4th at p. 353.) The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' (*ibid.*), but the rule does not apply when the sentence is legally unauthorized (*id*. at p. 354)." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751 (*Gonzalez*).)

The *Scott* rule requires that there be "a meaningful opportunity to object," which "can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Scott, supra*, 9 Cal.4th at p. 356.)

Here, the probation report recommended the aggravated term and identified, as circumstances in aggravation, facts including that "defendant's prior convictions as an adult . . . are numerous or of increasing seriousness," "defendant has served a prior prison term," "defendant was on probation or parole when the crime was committed," and "defendant's prior performance on probation or parole was unsatisfactory." According to

7

the report, there were no circumstances in mitigation.  (Cal. Rules of Court, rule 4.423.)
The court stated it read and considered the probation report and indicated it was
"tentatively prepared to follow the recommendation of 16 years in state prison."
Immediately thereafter, defense counsel argued against imposition of an aggravated
sentence, offering various factors to be considered in mitigation.  Counsel also argued
against two of the aggravating circumstances listed in the probation report:  "the manner
in which the crime was carried out indicates planning, sophistication, or
professionalism"; and "defendant took advantage of a position of trust or confidence to
commit the offense."

The prosecution responded to defendant's arguments and requested that the court
"follow the recommendation of probation."  The court then pronounced sentence,
explaining imposition of the upper term as follows:

"As to Count 1, I chose as the principal term for the violation of Penal Code
Section 288(a), lewd or lascivious acts with a child under the age of 14 years, I selected
the upper term of eight years as the appropriate term.  I considered the factors in
aggravation, most all of which standing alone would have caused me to apply the
aggravated term.  Some of them weighed more heavily on my thinking than others, but
taken together, all of them convinced me that the aggravated term is the appropriate term
balanced against the absence of any mitigating factors in the case.  But just generally, the
manner in which the crime was carried out indicated to me a certain level of planning or
sophistication or professionalism, however you choose to consider that.

"I share [the prosecutor's] view that while it may not have been an elaborate plan
developed after a lengthy period of reflection and thought and sophistication, that you
still had seized on an opportunity and you evidenced some interest in separating this child
from other children in order to commit these offenses.

"I clearly think whether we term the victim as being vulnerable or that you took
advantage of a position of trust, I think that is probably the more appropriate which our

probation officer specified. You were the person who had at least been persuaded and therefore volunteered to take charge of these children overnight, one of whom was our victim. In doing that, you took upon a position of trust not only with the parents, but with the child and you violated that trust clearly in committing the acts that you did.

"You have engaged in violent conduct at least in the past. That to me indicates you are a serious danger to the community. You have numerous prior convictions as an adult and they are to me, increasing in seriousness. You served a prior prison term. As a matter of fact, more than one. You were on probation or parole at the time of these crimes and you're [sic] past performance on probation or parole has been unsatisfactory by virtue of the fact you were apparently returned to prison on one or more prior occasions for violations of parole. And as I said, in the absence of any mitigating factors, virtually all of those aggravated factors standing alone would have caused me to select the aggravated term or principle [sic] charge in Count 1." Defendant did not object to any of the court's reasons for imposing the upper term.

Following pronouncement of sentence, the court imposed fees and fines, ordered defendant to comply with sections 290 and 296, and confirmed presentence custody credits were accurately calculated. The court informed defendant of his right to appeal and then asked, "Anything else before we close the record?" Defense counsel responded, "No."

The record is plain that the court stated its intention to impose the upper term and defendant had ample opportunity to object, both before pronouncement of judgment and after, prior to conclusion of the hearing. Although defense counsel argued against the upper term, counsel did not object to dual use of defendant's prior prison commitment or on the ground that defendant's acts were not "distinctively worse than the ordinary," grounds he asserts here on appeal. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." Defendant's failure to object forfeits these claims on

9

appeal. (*Scott, supra,* 9 Cal.4th at pp. 355-356 [defendant's claim that reasons used for sentencing were "inapplicable, duplicative, and improperly weighed" was forfeited]; *People v. Brown* (2000) 83 Cal.App.4th 1037, 1041-1042.)

Notwithstanding forfeiture regarding those particular grounds, defendant has not shown any error resulting in prejudice. Error, if there was one, was harmless because "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." (*People v. Avalos* (1984) 37 Cal.3d 216, 233; see *People v. Osband* (1996) 13 Cal.4th 622, 728-729 (*Osband*).)

The court noted that it "considered the factors in aggravation, most all of which *standing alone* would have caused me to apply the aggravated term." (Italics added.) Thus, even in the absence of the dual use of defendant's prior prison terms, it is clear to us that the court would otherwise have imposed the upper term based on one or more other factors. For example, the court also found that defendant "evidenced some interest in separating [S.L.] from other children in order to commit these offenses," defendant's prior convictions were numerous and increasing in seriousness, defendant was on probation or parole at the time the offenses were committed, and defendant's past performance on probation or parole was unsatisfactory. While defendant questions the permissibility of some of the aggravating factors on which the court relied, we have no trouble concluding there is ample evidence in the record to support the court's findings as to these particular factors (*People v. Gragg* (1989) 216 Cal.App.3d 32, 46), any one of which would have sufficed to justify the upper-term sentence. (*People v. Black* (2007) 41 Cal.4th 799, 815; *Osband, supra,* 13 Cal.4th at p. 732; *People v. Steele* (2000) 83 Cal.App.4th 212, 226.)

Defendant also claims the trial court failed to consider certain circumstances in mitigation, such as defendant's own molestation by his father, his persistent problem with alcohol, his ability to provide for his family when not incarcerated, and his success in obtaining his high school diploma while incarcerated. But defendant has not pointed to

anything in the record that shows the court did not consider these factors. To the contrary, the record shows the court read and considered the probation report, which discusses all but one of the argued factors (i.e., receipt of a diploma) and concludes there are no circumstances in mitigation. Moreover, defense counsel argued these circumstances in mitigation and the court, after considering the argument, rejected them and determined there were no mitigating factors. When exercising its discretion in selecting the appropriate term to impose, the sentencing court may consider broadly those factors set forth in the applicable California Rules of Court (see Cal. Rules of Court, rules 4.421 & 4.423) and "any other factor reasonably related to the sentencing decision," (Cal. Rules of Court, rule 4.420(b)) and weigh them however it sees fit. (See, e.g., *People v. Brown, supra,* 83 Cal.App.4th at p. 1043.) A trial court is not, however, required to verbally state that it considered factors in mitigation or state the reasons for rejecting them. (*People v. Mendonsa* (1982) 137 Cal.App.3d 888, 896; Evid. Code, § 664 [we presume that official duty has been regularly performed].)

In sum, the trial court did not abuse its discretion by imposing the upper term.

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P. J.


We concur:


      BUTZ      , J.


      HOCH      , J.

11