Filed 3/25/16  P. v. Carter CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LARRY TUDOR CARTER,<br><br>    Defendant and Appellant. | F069557<br><br>(Kings Super. Ct. No. 13CM4318)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Gomes, Acting P.J., Kane, J. and Peña, J.

Defendant Larry Tudor Carter was convicted by jury trial of robbery (Pen. Code, § 211)[1] and he admitted having served a prior prison term (§ 667.5, subd. (b)). The trial court sentenced him to the upper term of five years, plus a one-year enhancement for the prior prison term, for a total term of six years. On appeal, he contends the trial court abused its discretion by imposing the upper term. We affirm.

## FACTS

Deputy Davis testified that on May 7, 2013, at about 7:15 p.m., he was dispatched to the hospital to investigate a battery. He went to the emergency room and found the victim, a 35-year-old man, sitting in a wheelchair. His face was swollen, his eyes were bloodshot, and his left eye was almost swollen shut. He was calm under the circumstances, but he seemed afraid to tell the officer what had happened. After hesitating, the victim explained that he and another male went to the Stop N Shop to buy some chips and a soda at about 5:15 p.m. He went outside and stood about 50 feet from the store entrance while he ate his chips and drank his soda. At 5:23 p.m., a gray four-door car pulled into the parking lot and three Black males got out of the car. The driver was Lapries Harris. The victim called him "Mickey." The second person he mentioned only by the moniker "C Love." This was defendant. The third person was William Wharry. The victim said he had known them all of his life because he grew up with them.

The victim said Harris got out of the car first and said to C Love, "are you going to get at him[?]" Harris approached the victim and said, "give me what you got," as he tried to reach into the victim's pockets. The victim put his hands down at his pockets to prevent Harris from getting into them. Harris punched him in the face twice with closed fists. Harris told him he had a knife and he was going to stab him in the back. Defendant then began punching the victim with closed fists in the body and the face. The victim

---

[1] All statutory references are to the Penal Code.

could see Wharry circling around him, carrying something. The victim tried to protect his face as he was being hit. He did not try to fight back because he was scared. Harris was known to carry a gun. At some point, the victim lost consciousness and fell to the ground. When he regained consciousness, his cell phone and wallet were gone, as were the three males and the gray car. The victim's wallet, which had been in his right front pants pocket, contained $60, a bank card, and some other items. His cell phone had been in his left front pants pocket.

The officer left the hospital and went to the Stop N Shop. He spoke to an employee who refused to give his name. The employee showed the officer three excerpts of security surveillance footage of the crime. When the officer showed it to the victim, he said it was a "video of him getting jumped by a couple of guys."

The victim testified that he was 35 years old and had mental problems and cysts on his brain. He claimed to remember nothing about being robbed and said it never happened. He did, however, remember other facts about his life. He failed to respond to his subpoena to testify and was brought to court by force.

## DISCUSSION

Sentencing courts have wide discretion in weighing aggravating and mitigating factors and may balance them against each other in qualitative as well as quantitative terms. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A trial court may base an upper term sentence upon any aggravating circumstance the court deems significant. (*People v. Sandoval* (2007) 41 Cal.4th 825, 848.) Absent a showing that the sentence is irrational or arbitrary, it is presumed that the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831-832.)

Aggravating factors are factors that make a crime "distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) Accordingly, facts that are more egregious than whatever is necessary to establish the offense may properly

3.

establish an aggravating factor or factors. (See *People v. Miranda* (1987) 196 Cal.App.3d 1000, 1003.) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

In this case, when the trial court was contemplating defendant's sentence, the court found the following: (1) the victim was particularly vulnerable in that he was outnumbered three to one and also appeared to be cognitively or developmentally disabled in terms of mental maturity or development; (2) defendant engaged in violent conduct that indicated he was a serious danger to society in that his prior convictions were numerous and increasing in seriousness and his criminal conduct had continued from 1990, interrupted only by periods of incarceration; and (3) defendant had served terms in both the Youth Authority and state prison, he was on parole when he committed the current offense, and his prior performance on both probation and parole had been unsatisfactory. The court was unable to identify any mitigating factors.

Defense counsel argued that defendant seemed "to be at a point in his life when he's been kind of reflecting on his past and trying to pinpoint decisions that were made or events from his past." He had plans to relocate and get back in touch with his daughter, whose supportive letter counsel found to be very touching. Defendant's letter to the court expressed his remorse and guilt over this offense. Counsel argued that while defendant's criminal history was lengthy, he had very little guidance as a child and his extensive history did not mean he would be unsuccessful on probation.

The prosecutor agreed with the court that the victim's demeanor while on the stand suggested he was mentally challenged. The prosecutor argued that because defendant and the victim grew up in the same neighborhood and knew each other, defendant was likely aware of the nature of the victim's mental status. As for defendant's desire to change his life, he had a criminal history 25 years long and had received numerous opportunities as a juvenile and as an adult to redirect his life and had failed to do so, as the probation report stated.

4.

Defendant now contends the trial court overstated factors in aggravation and failed to recognize factors in mitigation, thereby abusing its discretion in choosing the upper term. First, we note that defendant forfeited the error by not objecting at the sentencing hearing. (*People v. Scott* (1994) 9 Cal.4th 331, 353, 356; *People v. Brown* (2000) 83 Cal.App.4th 1037, 1041-1042.) But even on the merits, defendant's showing fails.

Specifically, defendant disagrees with the trial court's finding that the victim was particularly vulnerable, and he proposes that the victim instead acted as he did to manipulate the court and the prosecutor because he did not want to testify. This proposal is mere speculation. The record does demonstrate that the victim did not want to testify or be present at trial and that he had shown fear and hesitation when he reported the crime to the officer. But the record also supports the trial court's conclusion that the victim had mental limitations. Furthermore, the court had the opportunity to observe the victim on the witness stand, and we will not question the accuracy of the court's observations, particularly when supported by the evidence. (See, e.g., *In re Valdez* (2010) 49 Cal.4th 715, 730 ["'The deference accorded factual findings derives from the fact the [trial court] had the opportunity to observe the demeanor of witnesses and their manner of testifying.'"].) In any event, the trial court found two other factors in aggravation, and any one of the three factors—two of which defendant does not challenge—suffices to support imposition of the upper term. (*People v. Osband, supra,* 13 Cal.4th at p. 728.)

We briefly address defendant's remaining point—that the court failed to identify three possible mitigating factors. First, he says he "was a passive participant or played a minor role in the crime," as provided by California Rules of Court, rule 4.423, because he was not driving the car and there was no evidence that the robbery was his idea. He argues that Harris's statement to him, "are you going to get at him," suggested defendant was initially hesitant to participate in beating up the victim. He says Harris was obviously the instigator of the group and defendant's acts were secondary to his. The

record, however, is devoid of any evidence suggesting defendant's participation in attacking the victim was either passive or minor. Second, defendant says he appears to have been a "throwaway child," and his record shows that imprisonment was not helping him become a different person and thus the upper term would not likely result in a better outcome for him or society. The more accurate view of defendant's record is that his repeated and worsening crimes and bad performance on probation and parole show that he cannot control his behavior when emancipated and that he has clearly failed to better either himself or society during those periods. Third, defendant points out that although he did not initially admit to participating in the crime, he later recognized that he should admit responsibility and show remorse. He says his letter to the court and his daughter's letter to him show he was considering a different path. But in light of defendant's multitude of missed opportunities to choose a different path, this reluctant and belated remorse for beating and robbing a vulnerable victim suggests nothing more than a strategy to serve his own interests.

In summary, the trial court did not abuse its discretion in imposing the upper term.

## **DISPOSITION**

The judgment is affirmed.