Filed 7/31/24  P. v. Barrios-Ixolin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>LUIS ENRIQUE BARRIOS-IXOLIN,<br><br>         Defendant and Appellant. | A168139<br><br>(San Francisco City and County Super. Ct. Nos. SCN 231577, CRI-6015943) |

After Luis Barrios-Ixolin discharged his revolver during a paid sexual encounter in 2016, killing Tiara Williamson, a jury convicted him of involuntary manslaughter and two firearm-possession offenses and found true that he personally used a firearm during the homicide.  In 2021, the trial court sentenced him to 12 years in prison, composed of the lower term of two years for involuntary manslaughter and the upper term of 10 years for the firearm enhancement.

Barrios-Ixolin appealed, and this court affirmed the convictions but vacated the sentence and remanded for resentencing under Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567).  (*People v. Barrios-Ixolin* (Oct. 11, 2022, A162895) [nonpub. opn.].)  Senate Bill No. 567, which went into effect after Barrios-Ixolin was originally sentenced, altered a trial court's discretion to choose the lower, middle, or upper term.  On remand, the

1

trial court imposed the same sentence, declining to reduce the upper term for the firearm enhancement.

Barrios-Ixolin now appeals from the judgment after resentencing. His sole claim is that the trial court abused its discretion by again imposing the upper term for the firearm enhancement. We conclude there was no error and affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are recited in our previous opinion. Briefly, in May 2016, 28-year-old Barrios-Ixolin encountered Williamson in the Mission District and agreed to pay her for sexual intercourse. At the time, he was carrying an unregistered revolver in his front pocket. Barrios-Ixolin and Williamson entered a portable restroom on the street, with Williamson standing in front of Barrios-Ixolin with her back to him. As they had sex, Barrios-Ixolin's gun discharged, hitting Williamson in the upper body. According to Barrios-Ixolin, who testified in his own defense, the gun accidentally fired after Williamson reached back and grabbed it and he tried to take it away from her. After being shot, Williamson tried to run away but collapsed nearby, and she ultimately died from her wounds. Barrios-Ixolin, who claimed he did not realize Williamson was hit by the bullet, immediately left the scene and was arrested a few months later.

Barrios-Ixolin was charged with felony counts of murder, carrying an unregistered loaded firearm in public, and carrying a concealed unregistered firearm.[1] It was also alleged that during the murder he personally and

---

[1] The charges were brought under Penal Code sections 187, subdivision (a) (murder), 25850, subdivision (a) (carrying loaded firearm),

2

intentionally discharged a firearm and personally used a firearm.[2]  The jury found him not guilty of first degree murder and not guilty of the lesser included offenses of second degree murder and voluntary manslaughter.  It found him guilty of the lesser included offense of involuntary manslaughter and found true that he personally used a firearm during the offense.[3]

In June 2021, the trial court denied probation and sentenced Barrios-Ixolin to a total term of 12 years in prison, composed of the lower term of two years for involuntary manslaughter and a consecutive upper term of 10 years for the firearm enhancement.  In selecting the upper term, the court primarily relied on three aggravating circumstances:  (1) the firearm "was used to shoot someone," not just hit or scare someone; (2) Williamson was "particularly vulnerable" given her positioning when she was shot; and (3) the crime "involve[d] great violence."  (See Cal. Rules of Court, rule 4.421(a)(1), (3).)  The court also imposed concurrent 16-month terms for the gun-possession offenses and stayed the term for carrying a concealed firearm.

Barrios-Ixolin appealed, claiming the jury instruction on accident was erroneous and a remand was required under Senate Bill No. 567.  We rejected his claim of instructional error, but we concluded that a remand for

and 25400, subdivision (a)(2) (carrying concealed firearm).  All further statutory references are to the Penal Code.

[2] The firearm allegations were made under sections 12022.53, subdivision (d) (personal and intentional discharge), and 12022.5, subdivision (a) (section 12022.5(a)) (personal use).

[3] The conviction for involuntary manslaughter was under section 192, subdivision (b).  There was no finding on the allegation of personal and intentional discharge of a firearm under section 12022.53, subdivision (d), since that provision does not apply to involuntary manslaughter.  (See § 12022.53, subd. (a).)

resentencing was required. The parties agreed that Senate Bill No. 567 retroactively applied to Barrios-Ixolin and the aggravating circumstances on which the trial court relied were not admitted or found true beyond a reasonable doubt, as now required to impose the upper term for a sentencing enhancement. (§ 1170.1, subd. (d).) Thus, the only issue we addressed was whether a remand was unnecessary because the court's reliance on these circumstances was harmless.

Applying the standard for assessing prejudice announced in *People v. Dunn* (2022) 81 Cal.App.5th 394 (review granted Oct. 12, 2022, S275655), we found beyond a reasonable doubt "that the jury would have found true that Barrios-Ixolin's gun 'was used to shoot someone' and the gun use 'involve[d] great violence,' in that Williamson died."[4] (See *Dunn*, at pp. 409–410.) But we also found that "there [was] a reasonable probability that the jury would not have found true that Williamson was 'particularly vulnerable' " and, in turn, that the trial court would not have imposed the upper term had it not relied on this circumstance. (See *id.* at p. 410.) As a result, we concluded that a remand was required.

After our remittitur issued in January 2023, both parties submitted resentencing memoranda. Barrios-Ixolin argued that the trial court should impose the lower or middle term for the firearm enhancement. He identified several mitigating circumstances that were before the court when it imposed the original sentence. These included his insignificant criminal history and acknowledgment of wrongdoing at an early stage of the case. (See Cal. Rules of Court, rule 4.423(b)(1), (8).) He also argued that his "post-sentencing

---

[4] As our previous opinion discusses in more detail, there is a split on the applicable standard for assessing prejudice, and the issue is still pending before our state Supreme Court. (*People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.)

conduct in prison weigh[ed] in favor of" a lesser term, submitting prison records to support his claim. (Boldface omitted.) In addition, he submitted numerous statements from family and friends attesting to his good character, some of which were prepared before the original sentencing and others of which were new.

Barrios-Ixolin also claimed the trial court "should consider [his] past trauma when considering whether re-sentencing him to the low or middle term on the gun[-]use enhancement [was] appropriate." (Boldface omitted.) He detailed the threats of violence from a gang he experienced in Guatemala, where he grew up. When he was 19 years old, a gang member tried to shoot him. Gang members then murdered his cousin, with whom Barrios-Ixolin was very close. This prompted Barrios-Ixolin to flee to the United States, after which the gang murdered two more of his cousins in Guatemala. Barrios-Ixolin claimed, consistent with his testimony at trial, that he bought the revolver used to kill Williamson a few weeks before the homicide "as a result of receiving threatening phone calls which caused the fears from his traumatic and violent childhood in Guatemala to resurface."

In its resentencing memorandum, the prosecution argued that the trial court should rely on the two aggravating circumstances we concluded the jury would have found true—that the gun was used to shoot someone and its use involved great violence—to again impose the upper term for the firearm enhancement. The prosecution also disagreed that Barrios-Ixolin's prison conduct was a mitigating factor, as he had "faced [three] different disciplinary actions while in custody, including one for violence." Finally, the prosecution urged that "no part of [Barrios-Ixolin's] alleged history of trauma justifies or mitigates his conduct in shooting and killing . . . Williamson."

5

At the June 5, 2024 sentencing hearing, the trial court imposed "the exact same sentence as before," including the upper term for the firearm enhancement. In explaining its ruling, the court first noted that Barrios-Ixolin's prison conduct was at best "neutral." Even though Barrios-Ixolin had pursued some programming, he had "five contacts for discipline within a two-year period," which was "not on the low end" compared to other prisoners.

Then, after confirming it was not relying on Williamson's vulnerability, the trial court concluded that the remaining aggravating circumstances still justified the upper term for the firearm enhancement. The court again focused on the fact that Barrios-Ixolin used the gun to shoot someone, not just hit or threaten. Though the court also mentioned "violence," it made "clear that standing alone, . . . the manner in which the gun was used in this case based on the jury's verdict is enough to depart from the middle term and impose the upper term."

## II.
### DISCUSSION

The jury found the firearm enhancement true under section 12022.5(a), which provides that "any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." The term "use" under section 12022.5 includes " 'display[ing] a firearm in a menacing manner, . . . intentionally fir[ing] it, [and] . . . intentionally strik[ing] or hit[ting] a human being with it.' " (*In re Tameka C.* (2000) 22 Cal.4th 190, 197; see § 1203.06, subd. (c)(2).)

Effective January 1, 2022, Senate Bill No. 567 amended section 1170.1 to provide that "[i]f an enhancement is punishable by one of three terms, the [trial] court shall, in its sound discretion, order imposition of a sentence not

6

to exceed the middle term, except as otherwise provided in paragraph (2)."
(§ 1170.1 subd. (d)(1); Stats. 2021, ch. 731, § 2.) In turn, subdivision (d)(2) of
the statute provides that "[t]he court may impose a sentence exceeding the
middle term only when there are circumstances in aggravation that justify
the imposition of a term of imprisonment exceeding the middle term, and the
facts underlying those circumstances have been stipulated to by the
defendant, or have been found true beyond a reasonable doubt at trial."
(§ 1170.1, subd. (d)(2).) Thus, the middle term is now the presumptive
sentence for an enhancement unless aggravating circumstances admitted or
proved beyond a reasonable doubt justify the upper term.

"After a sufficient factual basis to support the circumstances in
aggravation or mitigation is found, the [trial] court enjoys broad discretion in
its sentencing determination." (*People v. Hilburn* (2023) 93 Cal.App.5th 189,
205.) We review the court's discretionary sentencing decisions, including its
weighing of aggravating circumstances against mitigating circumstances, for
an abuse of discretion. (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8;
*Hilburn*, at p. 205.) The court must exercise its discretion "in a manner that
is not arbitrary and capricious, that is consistent with the letter and spirit of
the law, and that is based upon an 'individualized consideration of the
offense, the offender, and the public interest.'" (*People v. Sandoval* (2007)
41 Cal.4th 825, 847.) An abuse of discretion occurs if the court "relies upon
circumstances that are not relevant to the decision or that otherwise
constitute an improper basis for decision." (*Ibid.*)

Barrios-Ixolin makes three main arguments for why the trial court
abused its discretion in selecting the upper term for the firearm
enhancement. First, relying on section 1170, subdivision (b)(6), which was
also added by Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3), he claims that

7

the lower term was the presumptive term. Under that provision, when sentencing a defendant for a substantive offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term" if an enumerated circumstance "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6).) One such circumstance is if the defendant "experienced psychological, physical, or childhood trauma." (§ 1170, subd. (b)(6)(A).) Barrios-Ixolin claims that "[g]iven the psychological and childhood trauma [he] experienced both in Guatemala and the United States," the court should have sentenced him to the lower term for the gun use.

Barrios-Ixolin fails to recognize that there is no similar provision in section 1170.1, subdivision (d), the statute that governs the selection of a term for an enhancement. After Senate Bill No. 567, both sections 1170 and 1170.1 make the middle term the presumptive term in general, but the latter statute does not provide for a presumptive lower term in any circumstances. Barrios-Ixolin does not explain why section 1170, subdivision (b)(6), should nonetheless apply to the sentencing choice at issue.

Moreover, even if section 1170, subdivision (b)(6), did apply, Barrios-Ixolin forfeited this claim by failing to raise it below. His resentencing memorandum cited this provision in arguing that the trial court should take his past trauma into account when considering whether to impose "the low or middle term," but he never claimed that the lower term was the presumptive term. Indeed, this was a sensible omission. Even putting aside the provision's inapplicability, there was little practical difference between whether he received the lower term (three years) or the middle term (four years). As his trial counsel explicitly recognized, since he had already served

8

seven years in prison (including the two-year lower term for involuntary manslaughter), the only way he would not be subject to immediate release was if he received the 10-year upper term for the firearm enhancement. Barrios-Ixolin cannot now argue that he was entitled to receive the lower term because of his trauma.

Second, Barrios-Ixolin claims that "the trial court committed error when it relied on *Brown* to support its decision in [his] case." In its ruling, the court cited *People v. Brown* (2000) 83 Cal.App.4th 1037 (*Brown*) as a case with "some similarities" to this one. There, the defendant, a police officer, shot another police officer with whom she was having an affair when he tried to end the relationship. (*Id.* at pp. 1039–1040.) She was convicted of attempted voluntary manslaughter and personal use of a firearm under section 12022.5(a). (*Brown*, at p. 1041.) The trial court sentenced her to the lower term for attempted voluntary manslaughter, citing her lack of criminal history, and the upper term for the firearm enhancement, "noting [she] 'used this firearm repeatedly and inflict[ed] great bodily injury.' " (*Id.* at p. 1043.)

On appeal, the *Brown* defendant claimed the trial court erred by imposing the lower term for the substantive offense and the upper term for the firearm enhancement. (*Brown*, *supra*, 83 Cal.App.4th at pp. 1045–1046.) The Second District Court of Appeal rejected the notion that "as a matter of statutory or rule-promulgated law . . . the sentence for a principal offense and accompanying enhancement must always be of the same level, upper, middle, or lower." (*Id.* at p. 1046.) It then concluded that under the circumstances, the trial court did not abuse its discretion by selecting these terms. (*Ibid.*) Since the defendant had a minor record and the offense occurred "during the heat of passion or unreasonably in response to a perceived threat by [the victim]," the trial court could reasonably determine that she committed "a

9

less serious form of attempted voluntary manslaughter." (*Ibid.*) On the other hand, "the trial court could also intelligently conclude that the misuse of the handgun . . . was aggravated by" several factors, including the number of shots fired and the infliction of great bodily injury. (*Ibid.*)

Barrios-Ixolin argues that "on its facts, *Brown* is distinguishable from [his] case," and he also notes that the decision is "based on the old sentencing law and was issued prior to the amended statute." In our view, the trial court here discussed *Brown* merely as an example of circumstances in which it can be appropriate to impose the lower term for the substantive offense but the upper term for an accompanying firearm enhancement. Indeed, the court explicitly recognized both that *Brown* was "[n]ot exactly on point, of course," and not decided under current sentencing law. Thus, while *Brown* may have involved more aggravating circumstances, we see nothing objectionable about the court's use of the decision to explain why it chose to impose the upper term for the firearm enhancement here.

Finally, Barrios-Ixolin claims that "there were many mitigating factors that supported the lower ter[m] sentence for the firearm enhancement" and the manner in which he used the gun did not justify the upper term. To the extent Barrios-Ixolin suggests the trial court did not consider all his mitigating evidence, he forfeited this claim by failing to object below. (See *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100–1101; *People v. King* (2010) 183 Cal.App.4th 1281, 1322.) In any case, as the Attorney General observes, the court's selection of the lower term for involuntary manslaughter clearly establishes it did consider such evidence.

As for the primary aggravating circumstance on which the trial court relied, Barrios-Ixolin claims that nothing "render[ed his] firearm use distinctively worse than ordinary." But as the court explained,

section 12022.5(a) criminalizes uses of a firearm that are less serious than shooting it, like displaying it threateningly. Barrios-Ixolin cites no authority to suggest that the court could not reasonably conclude that his *shooting* of the gun, ultimately killing Williamson, justified the upper term for the firearm enhancement. To the extent Barrios-Ixolin otherwise asks us to reweigh the aggravating and mitigating circumstances, we decline to do so.

### III.
### DISPOSITION

The judgment is affirmed.

_____
Humes, P. J.

WE CONCUR:


_____
Banke, J.


_____
Langhorne Wilson, J.

*People v. Barrios-Ixolin*  A168139

12